COBB, Judge.
Flagship Bank of Orlando filed a complaint to foreclose a mortgage on certain real property located in Orange County. The appellants, Lionel E. LaGrow and Patricia A. LaGrow, his wife, defendants below, raised affirmative defenses, and filed a counterclaim and cross-claim. In their pleadings, the LaGrows alleged that the property subject to the mortgage had been mortgaged by William Ravenel and his wife to Flagship Bank of Orlando at i time when the LaGrows owned one-half interest in the property, and that the bank was not a bona fide purchaser of the mortgage because it had failed to make a reasonable inquiry into the ownership of the real property; the LaGrows also defended on the ground that the mortgage was not supported by any valuable consideration.
The trial court found that the bank had given value and had made a diligent search into the ownership of the property and was without knowledge of the interest of the LaGrows in the property and, therefore, the bank was a bona fide purchaser that could foreclose upon the mortgage. It is this amended final judgment of foreclosure that the LaGrows are appealing.
The factual background preceding the foreclosure complaint, as revealed by the record before the trial court, shows that as of October 1, 1968, three persons — William Ravenel, George Black, and Lionel La-Grow — entered an agreement to become equal one-third owners of a corporation, Agricon, Inc. On July 11, 1969, the corporation filed a corporate report and tax return with the Secretary of State which listed the officers and directors of Agricon, Inc., as follows: George Black, president and director; William Ravenel, vice president and director; and B. S. Ravenel (William Ravenel’s wife), secretary-treasurer and director. William Ravenel was listed as resident agent.[1]
On October 1, 1969, George Black resigned from Agricon, sold his stock shares back to the corporation, and moved from the Orlando area to Tampa. Thereafter, Agricon ceased doing business as an active corporation, owning only one asset: the subject realty on Oakridge Road in Orlando. This, in effect, left William Ravenel and Lionel LaGrow as equal half owners of this real property.
On July 11,1972, Agricon, Inc., was involuntarily dissolved by the Secretary of State for failure to pay its 1971 capital stock tax. In 1973, the LaGrows offered their one-half interest in the real property to Ravenel for $25,000, but no deal was consummated. In 1975, the LaGrows, who did not reside in the area, unsuccessfully asked Ravenel, who was occupying and using the realty in return for carrying the mortgage payments, for an accounting of the property.
In 1975, two unsecured loans that Flagship had made to two corporations owned and controlled by William Ravenel, who had personally guaranteed the loans, went into default. These aggregated some $90,000. Ravenel then proposed to the bank that they extend this indebtedness and consolidate these loans in his individual name in return for which he would give the bank security: a first mortgage lien on the Oak-ridge property in the amount of $100,000.
The bank realized that its unsecured loans to Ravenel’s corporations “looked very bleak,” according to the sworn testimony of their loan officer, one Robert Dotherow. It was also aware that Ravenel’s current business venture, a coal mine in Kentucky, was a “disaster,” that he was out of a job, *125 involved in various lawsuits, was a candidate for imminent personal bankruptcy,[2] and that he purposely clouded the title to the Oakridge property to deter judgment creditors. Realizing Ravenel’s desperate financial plight, and its own in respect to the money owed on the two loans, the bank leaped in to salvage what it could by closing the new collateralized loan with Ravenel without a title opinion on the property. It even paid for Ravenel’s air fare from Kentucky to consummate the closing of the mortgage, gave him additional cash of $765.00, and paid off the first mortgage lien of approximately $6,100. The mortgage loan was closed on September 8, 1975.
Some two weeks after closing the mortgage loan, the bank received a title opinion from its attorney warning it that the title was “subject to any claims of stockholders of Agricon, Inc., a dissolved Florida corporation, who may claim a stockholder interest in the subject property.” The bank never inquired as to the identity of these stockholders, either before or after acquiring the mortgage from the Ravenels, and it never contacted George Black, the listed director, hence trustee after dissolution, whom it could not locate. Moreover, the bank was aware, as of the September 8th closing, that the Orange County Circuit Court had enjoined the Ravenels from conveying or encumbering a portion of the subject property, but made no further inquiry in that regard prior to closing.
The bank relied solely on the last annual report of Agricon, Inc., from the Secretary of State, in conjunction with an affidavit from the Ravenels confirming the report. Based on this, the bank prepared and had the Ravenels execute a quit-claim deed as directors of the dissolved corporation conveying the Oakridge property to themselves individually.
In the last analysis, the bank’s claim to status as a bona fide mortgagee rests solely on the report from the Secretary of State showing the Ravenels and Black as the last officers and directors of Agricon, with no mention of the LaGrows or any shareholders. We do not believe the bank satisfied its duty of inquiry sufficiently to attain the status it claims. As stated by the Florida Supreme Court in Sickler v. Melbourne State Bank, 118 Fla. 468, 159 So. 678, 679 (1935):
It is too well-settled to require the citation of authorities that one who has either actual or constructive information and notice sufficient to put him on inquiry is bound, for his own protection, to make that inquiry which such information or notice appears to direct should be made, and, if he disregards that information or notice which is sufficient to put him on inquiry and fails to inquire and to learn that which he might reasonably be expected to learn upon making such inquiry, then he must suffer the consequences of his neglect.
See also Gabel v. Drewry’s Ltd. U.S.A., Inc., 68 So.2d 372 (Fla.1953).
In the instant case, there were abundant facts alerting the bank to the improprieties of William Ravenel which should have prompted it to further inquiry and investigation in regard to the true ownership of the Oakridge property. In view of our conclusion in regard to this point, we need not consider the appellants’ remaining point challenging the sufficiency of the bank’s consideration.
Accordingly, the judgment of the lower court, insofar as it relates to the one-half interest of the LaGrows in the Oakridge property, is reversed and this cause is remanded to allow foreclosure to proceed on the other one-half interest.
REVERSED and REMANDED.
FRANK D. UPCHURCH, Jr., and SHARP, JJ., concur.

. The deposition testimony of Lionel and Patricia LaGrow indicated that he was supposed to be listed as a director and she as treasurer; Black’s recollection was that each of the three shareholders was to be a director and one of the LaGrows was to have been treasurer.

. In fact, Ravenel did declare bankruptcy some two months later.